Case number 23-3309 and 23-3365. Mark Hartman v. Dave Yost. Arguments not to exceed 15 minutes per side. Ms. Watson, you may proceed to the adjournment. Thank you. Let me just make sure. You've reserved 5 minutes for a vote. Is that right? Okay. You may please support Stephanie Watson on behalf of Ohio Attorney General Dave Yost. And yes, I would like to reserve 5 minutes. Thank you, Your Honor. The District Court's decision granting the wit on Hartman's sixth ground must be reversed. This is an Adeepa case involving a defense counsel's strategy in a contested he-said-she-said date rape case. The review in habeas, as you know, is limited by the strict standard of review. The Habeas Court must defer to the State Court decision if its reasonable application, unless it is an unreasonable application of United States Supreme Court precedent or clearly contrary to United States Supreme Court precedent. The issues involved clearly established precedent with Strickland v. Washington and a double deferential Adeepa standard of review. Only if Hartman can show the State Court decision was clearly contrary to or an unreasonable application of Strickland may he succeed in this case. Unfortunately, the District Court failed to adhere to its obligation under Adeepa and unlawfully usurped the Ohio Court's decision on this sixth habeas ground. This claim was that Hartman's trial counsel was constitutionally ineffective for employing a reasonable trial strategy of attempting to impeach the victim by cross-examination. Again, in this he-said-she-said date rape case. Essentially, the argument here, as I understand it, is that the State failed to prove any force. So therefore, by engaging in this questioning about the witness's credibility, force was created in the record that didn't previously exist. Now, the State Court very clearly debunked that. So I assume your argument simply is we defer to the State Court. You're absolutely correct, Your Honor. You've read my notes. My next statement was going to be given the fact that the State Court did find that there was reasonable force in this case. And this is not just in the entire examination of the victim, but in just her direct examination with the prosecution. That fact is unreviewable by this Court. And given that fact, what else was defense counsel to do? If he had just not examined and cross-examined the victim, we would be here for an entirely different ineffective counsel claim because he didn't put on a defense. I'm concerned about the way you've stated the standard, saying that the law requires mandates, complete deference to a State Court's application and pronouncement of State law. But doesn't it speak in terms of that that deference is only appropriate in those determinations by the State Courts that, as was said in Williams v. Taylor, do not conflict with Federal law or apply Federal law in an unreasonable way? Isn't that the correct standard? Well, Your Honor, in response, it depends on the issue that's being looked at. If it is a matter of interpreting what a State crime is, then no, there's no review whatsoever. The deference is mandated, not necessarily by DEPA, but that's just standard established habeas court precedent. The Ritchie case from the United States Supreme Court said that the habeas court must defer to State court applications of State law. Assuming there is no violation of Federal law or constitutional rights. If we're looking at an ineffective counsel claim, that is a claim that may be reviewed, obviously, under a DEPA standard of review. And this Court may review it, but only to the extent that it was not clearly contrary to established Supreme Court precedent. Yes, I agree with that. I think we're talking in different languages. Okay, so if we're looking at what the State, as Judge McKeague said, if we're looking at what the State Court applied and interpreted and decided as far as State statutory law on what is rape and what are the elements of rape and did the State prove the elements of rape, that decision is not reviewable here. That is a State law interpretation and State law decision that is entirely untouchable. What we can look at is what the trial counsel did with the strategy. Was that a reasonable trial strategy? And the Supreme Court precedent is so strict on this issue, under Richter and the Dunn case, it basically says that this Court must defer unless every other reasonable jurist would have determined that no lawyer would have done something differently. And that just can't be accomplished in this case, given the fact, as Judge McKeague said, that force was definitely proved, there was enough evidence that the trier of fact could reasonably infer that she was forced physically and or in fear of being submitted to further force by his actions, that three instances of rape did occur. And that strategy would necessitate trying to poke holes in her story by cross-examination. There's simply no other way that the defense could have proceeded. That strategy was evident from the beginning when he gave statements to the law enforcement and took polygraph examinations trying to head off the charges altogether, because he believed that consent was given and that he could reasonably prove his version more credible to police. But when that didn't prove to be the case and charges were brought, he continued that trial strategy. And his opening argument, you can see, it's a credibility determination. It turns on who does the trier of fact believe, her or him. And that is how the case proceeded. He had no other choice once the state came forth with the evidence of force to try to poke holes in her story. And ultimately, the Supreme Court says it's the trier of fact's decision who to place more credibility. And in this case, it was the victim. So for these reasons, we would argue that the district court's decision, totally ignoring that deferential standard of review and usurping that state court decision, must be reversed in this case. Plainly, there was reasonable argument in favor of the strategy. And Mr. Hartman cannot prove otherwise. Unless there are any other questions, I'll turn to the second ground, which is another ineffective assistance counsel claim involving a strategy. This time, involving counsel's advice to waive his right to a jury trial. This decision by the district court was correct, and we argue must be affirmed. The district court correctly found there was no ineffective counsel here because the advice that was given was reasonable. Yes, Mr. Hartman claims, I believe through an affidavit submitted by his mother in post-conviction, that defense counsel told them that the judge had three sons instead of three daughters, and that would be a good bonus in his case. He might look at this case more favorably in raising three sons, when in actuality it turned out that he did not have three sons. He had three daughters. But the fact still remains that all the other facts that the counsel provided in his sound advice for choosing a bench trial over a jury trial are still equally valid. The fact that this was a distasteful subject matter, a date rape, a contested date rape case, in a social climate where such matters were not obviously very, very well looked upon by society, and it would be good advice to advise your client, go with the trial judge, who's an educated lawyer and who won't be swayed by emotions. He won't be swayed by crying on the stand. He won't be swayed by whatever the victim says. He'll look at the facts. Well, how are you different from Padilla? How are you different from Padilla, if I'm pronouncing it correctly, the collateral consequences of a guilty plea case that were required to be, where the defendant is required to be informed of those collateral consequences? The opposing counsel argues that that should govern. Well, of course, the Padilla case is a guilty plea case, and this is a different right that you're waiving. In a right to waive your jury trial, the only requirement is that you are aware that you're going to be judged by a panel of your peers, of people, or of a judge. And he was certainly very well aware of that in this case when he waived his right in writing and on the record. I see that I am running out of time. I can reserve the rest of my argument for later. Thank you. Good morning, Your Honors. Adele Schenck for Mark Hartman. Mr. Hartman was granted a conditional writ. Could you speak up a little, please? I'm sorry, Your Honor. Mr. Hartman was granted a conditional writ based on the denial of his Sixth Amendment right to effective assistance of counsel when his lawyer cross-examined the complaining witness in this rape case after she had failed on direct exam to offer any testimony proving the element of force or that Hartman had done anything that actually compelled her submission. Now, the state court disagreed with you on that, right? The state court said that with regard to the evidence up to the time of the cross-examination, that it was at least arguable that evidence of force had been presented on the third count. It made no such finding with regard to the other two counts. And that arguable determination was really an unreasonable determination of fact because under Ohio law, force has to be physical, has to be used by the defendant purposely with the specific intent to compel submission by force or by a threat of force. And either the force or the threat of force has to have actually compelled submission. Did the Ohio Court of Appeals distinguish between the evidence of force at the conclusion of the direct testimony from one count to the next? I don't remember that. It did not. It actually kind of lumped everything together. So, correctly or incorrectly, Ohio lumps it all in together and says there's plenty of evidence of force. So, what do we do under our constrictions based on EDPA deference? What do we do with that Ohio finding? Do we say it's wrong? Do we just disregard it? Well, I think that you agree with Judge Rice. But the other thing I want to make clear, Your Honor, is that they didn't say there's plenty of evidence. They said it was at least arguable on one count. And that's important because in considering whether... This is the Ohio lower court or the Court of Appeals? This is the Court of Appeals, the last look-through decision. Because the question of how close a call the evidence might have been is very important in assessing counsel's conduct and whether or not an effective assistance was rendered. So, it's not an overwhelming case. It's extremely close. And the court acknowledged it and did not even claim anything with regard to the other two counts. I don't think there's an issue with EDPA in terms of Judge Rice's determination. He found that there was no reasonable strategy for counsel to cross-examine when there had been a failure to submit proof. And remember, that submission, that finding that there was enough evidence, possible or arguably is the word the court used, on one crime is a finding of fact that was unreasonable. Judge Rice, by this language, has rejected that factual finding and found it to be unreasonable. And the record is clear and convincing. A review of the words spoken on direct examination show that there was not proof of force even on the third claim. So, let me ask you the question this way. Do you agree, sort of globally, this is a he said, she said case? Globally. So, the problem that I have trying to figure out what the defendant's attorney should have done is, yours seemed to be saying that at the conclusion of direct, he should have known that no court would find that there was sufficient evidence of force. So, he could then simply say, no questions, and he's not violating Strickland. When there is at least an arguable question whether there was a sufficient amount of force shown, and assuming that it was arguable, which is what the court of appeals, the state's court of appeals has said, then it seems to me because you agree it's a he said, she said case, he had no choice except to challenge her credibility. Your Honor, I do not agree that it was arguable. That was an unreasonable finding of fact. Even the state court has to follow the law. And the law is established by statute in Ohio Supreme Court precedent, and it says what must be proved to establish the force element. And you can review the direct exam backwards and forwards a hundred times, and the aspects of force that the law requires to be proved were not there. And counsel who had done his job and investigated the case and interviewed the witnesses and gotten the bill of particulars and challenged the indictment, none of which this lawyer did, which is also important in assessing the ineffective assistance of counsel. So, pushing her down on the bed twice, that's not force? Pushing her down on the bed twice was when they went into the bedroom and they were engaging in consensual conduct. She characterized it as having been pushed down on the bed. She stayed on the bed kissing him consensually. When he tried to do something she was unhappy with, she said no, he stopped. They went on kissing consensually, and she said that is fine. We have her own testimony that being pushed on a bed did not compel submission, and that is the level of force that must be used, a force that actually compelled submission. What about being pulled into the shower? There was no sex in the shower. Although they did go into the shower together, she decided she did not want to have sex. She left the shower, she wrapped herself back up in a blanket, and instead of running away or calling for help, returned to the bedroom. Only when they went into the bedroom was there another act of sexual conduct. And that act, she testified that she didn't feel like fighting, so she decided to just go along with it and let it be over, and that she didn't even say no until after he quote rolled off of her. So, there just was not force. And those sex acts, as you can tell from the facts, have kind of, they've gone very quickly one after the other, and yet been divided into separate counts. And each separate count must have all of the elements proved for each count. There is no evidence to support the idea that force compelled her submission anywhere, and in fact, she testified repeatedly that she was not compelled by force or threat of force, but by her fear from stories she had heard growing up as a child. She doesn't just say it once, she repeats it several times throughout her testimony. And the state admitted it. The state said that she was afraid, not by anything that Mark Hartman did or said, but that it was rational in her mind. What she thought does not determine the defendant's intent. Mark Hartman never had the specific intent to force this young woman into being compelled by force or threat of force. And that is what the record shows conclusively. I just want to mention, Your Honor, because you talked about the finding that there was enough evidence, the different finding on the sufficiency of the evidence claim, as you know, we were denied a COA on that, but assuming that in that next round of the balance of the trial you found sufficient evidence, it doesn't change the fact that what we're talking about is what defense counsel did on cross-examination. And when her testimony was finished on direct, they had failed to prove that there had been compulsion by force or by threat of force made by the defendant. With regard to the ADPA standards, I believe Judge Rice thoroughly set them out in opinion. He assessed the facts thoroughly. He found that there's no reasonable trial strategy for counsel to repeatedly prove the elements when the state has not done so. And he found that counsel's cross-examination resulted in a fundamentally unfair trial. I'm going to go ahead and address briefly the jury waiver issue. In that instance, Mark Hartman is a person who had no criminal record, no dealings with the court system, knew nothing. He relied entirely on his lawyer. His lawyer gave him information that was important to him in terms of making his decision and relying on his counsel's advice. In Strickland, the court recognizes that knowing the propensities and viewpoints of the particular judge who's sitting on a case may be important. And it's an aspect of counsel performance for that information to be provided. That information was not correct in this case. The judge had three daughters, not three sons. And the judge put that in footnotes so we don't have any question that that information that was provided to Hartman was wrong. Hartman was raving about the statements that, what about the statements that in the context of what was going on publicly with Me Too and that type of information out that he, that the attorney was recommending that it would be better not to go before jurors and instead go before a judge that he had had cases with before. Well, the statement was made and I don't personally agree with it. I mean, 12 jurors is always better than one. But in this instance, even if he got something right, it doesn't outweigh the fact that he got something very important to a decision involving a text-based constitutional right that has far-reaching implications, not only for how the trial goes, but also for what happens when you're going through appeals and post-conviction processes. And that information was wrong. And it was relied on by a client who needed to know the truth from his own lawyer. So with regard to that, I think that the question of whether or not relief should be granted, you should also look at the idea that I understand that it's difficult to prove what the consequence of something might be when it has failed to have been done correctly. But I again refer you to Strickland. In Strickland, they set out a list of matters where prejudice is presumed. And in one of those characterizations, they mention the denial of the right to cross-examination. I believe they cite Davis, which was a case in which a court had imposed some limitations. It was not a complete denial of cross-examination, on cross-examination. And the Strickland court identified it as a circumstance in which presumption of prejudice would apply. And I think that should be true here. Because you may never be able to say for sure. It's too difficult to prove. And that is one of the standards for assuming prejudice. So in this instance, we have a young person with no court experience being given incorrect information on a factor that was important to his decision to waive a text-based Sixth Amendment right and getting false information from this counsel. Under the reasoning in Padilla, he clearly had a right to have the correct information from this lawyer. And if the court recalls from Padilla, the ease with which the information can be found is an important factor. This was so easy. He was in court. The lawyer was in court and could simply have said, Judge, do you have daughters? I mean, clearly the judge wasn't hiding it. He put it in the footnote in a later opinion. So I think that Judge Walter Rice made it clearly consistent with the AEDPA and Strickland decision on the first matter, which is the cross-examination, and that in this instance, with regard to the waiver of the jury, he should have taken the opposite path. Counsel's characterization that there was not enough force in the state's direct is refuted by the record plainly. It's not my interpretation that counts. It's not her interpretation that counts. It's the state court's interpretation that counts. And you can read for yourself the direct examination. She was pushed onto the bed. She was pulled into the shower. Her clothes were removed. She was pulled back into the bed after having three times of sex. There were sex acts that occurred in the shower. There was physical touching and vaginal touching. And she was crying. And the main fact that she repeatedly said no, no means no. Withdrawing your consent was ignored here many times. She said no. After the consensual kissing began, she said no to every step as the advance progressed thereafter, to feeling her breasts, to taking off her clothes, to feeling, penetrating her digitally, to vaginal intercourse. At every step of this, she said no. Mr. Hartman chose to ignore that and has unfortunately suffered the consequences. With regard to her state of mind, what she thought about her fears is absolutely relevant to whether her will was overcome by her fear or duress. So what she felt is 100 percent relevant to whether or not she felt too scared and whether or not she felt that she was going to be hurt further and she was struck quiet. She testified in direct that she didn't scream. In fact, the prosecutor's very last question in direct was, why didn't you scream? Why didn't you scream for help? And she responded, I was afraid. I was afraid that no one would hear because I didn't know where my friend was. I was afraid if I screamed, he was going to hurt me even more. And I thought if I just went along, I would survive. That is a definite statement that she was exhibiting duress and fear and that her will was overcome. Even assuming the evidence was only arguable, as counsel pointed out, that still means that counsel would have been ineffective if he had failed to test her credibility. If there was enough evidence that it would at least be arguable, he can't just let that go, or that's going to be considered ineffective counsel. District Court Judge Rice said, in summary, with no analysis, that this case was a fundamentally unfair exhibition of ineffective counsel. But that's not the deepest standard. The standard was, was there any reasonable argument that counsel satisfies Strickland's deferential standard? Even with just an arguable amount of force, there is an arguable, reasonable argument that counsel had to put on a defense and cross-examination. Whether opposing counsel or Judge Rice agrees with what counsel did was right is, again, not the standard. The standard is whether the habeas court can only grant relief if every fair-minded jurist would agree that every reasonable lawyer would have made a different decision. That tracks with Harrington. The habeas courts can only correct extreme malfunctions in the state criminal justice system. That simply is not what happened here. No one disputes that this was an unfortunate circumstance. Certainly, consensual kissing was testified to. But after consensual kissing, there were repeated revocations of consent with her repeated statements of no that were just ignored. The case simply highlights that absolute, that no means no, that someone may not repeatedly ignore another person's stated objection in an attempt to overcome their will and persuade them to continue because it might be fun or feel good. Unfortunately for Mr. Hartman, he was unsuccessful, and this case is before you now. We would request that the decision to grant the writ on the sixth ground be reversed and that the opinion be affirmed in all other respects. If you have any questions, otherwise, I'll thank you for your time. We appreciate the argument that both of you have given, and we'll consider the case carefully. That being the last argued case, the court may adjourn the court. This honorable court is now adjourned.